# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| DUNKIN' DONUTS FRANCHISING LLC, a Delaware Limited Liability Company; DD IP HOLDER LLC, a Delaware Limited Liability Company; BASKIN-ROBBINS FRANCHISING LLC, a Delaware Limited Liability Company; BR IP HOLDER LLC, a Delaware Limited Liability Company; and DB REAL ESTATE ASSETS I LLC, a Delaware Limited Liability Company, <br><br> *Plaintiffs*, <br><br> v. <br><br> YUGDHARINI LLC, a North Carolina Limited Liability Company; ROHITKUMAR L. SAVANI, an individual; RAJENDRA I. PATEL, an individual; HARPREET SINGH, an individual; BABUBHAI K. DUDHAT, an individual; and JAGDISH N. NAKRANI, an individual, <br><br> *Defendants*. | Case No. _____ |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

This is an action for breach of contract, trademark infringement, trade dress infringement, and unfair competition arising from Defendants' violation of their Franchise Agreements and Sublease Agreements with Plaintiffs. Defendants breached the agreements by repeatedly violating Dunkin's operational standards relating to health, food safety, and sanitation at their former Dunkin' Donuts/Baskin-Robbins combo shops. Defendants have received multiple written notices identifying their defaults and demanding that they be promptly cured but they have failed to

remedy the situation. Indeed, a recent inspection of Defendants' shops revealed the existence of mold in the ice machine, food preparation equipment not properly cleaned and sanitized, food not properly dated or stored, and improper hygiene practices by employees, to name but a few of the violations identified. Based on these repeated violations, Plaintiffs recently sent Defendants a Notice of Termination terminating their Franchise Agreements and Sublease Agreements. Defendants' continued use and enjoyment of Plaintiffs' trademarks, trade names, and trade dress after the effective date of the termination of the Franchise Agreements is a violation of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* Plaintiffs seek monetary, injunctive, and other relief against Defendant for the reasons set forth below.

## PARTIES

1. Plaintiff Dunkin' Donuts Franchising LLC is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. It is engaged in the business of franchising independent businesspersons to individually own and operate Dunkin' Donuts shops throughout the United States. Dunkin' Donuts franchisees are licensed to use the trade names, service marks, and trademarks of Dunkin' Donuts and to operate under the Dunkin' Donuts system, which involves the production, merchandising, and sale of donuts and related products utilizing a specially designed building with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks and identification.

2. Plaintiff DD IP Holder LLC, Dunkin's wholly owned subsidiary and successor-in-interest to Dunkin' Donuts USA, Inc., is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. DD IP Holder LLC is the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks. Unless otherwise specified, Dunkin' Donuts Franchising LLC and DD IP Holder LLC are hereinafter

collectively referred to as "Dunkin'."

3. Plaintiff Baskin-Robbins Franchising LLC is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. It is engaged in the business of franchising independent businesspersons to individually own and operate Baskin-Robbins stores throughout the United States. Baskin-Robbins franchisees are licensed to use the trade names, service marks, and trademarks of Baskin-Robbins and to operate under the Baskin-Robbins system, which involves the production, merchandising, and sale of ice cream and related products utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

4. Plaintiff BR IP Holder LLC, successor-in-interest to Baskin-Robbins Incorporated is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. BR IP Holder LLC is the owner of the trademark, service mark, and trade name "Baskin-Robbins," and related marks. Unless otherwise specified, Baskin-Robbins Franchising LLC and BR IP Holder LLC are hereinafter collectively referred to as "Baskin-Robbins."

5. Plaintiff DB Real Estate Assets I LLC, a successor-in-interest to Third Dunkin' Donuts Realty, Inc., is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. It is engaged in the business of leasing properties to enable Dunkin' to franchise independent businesspersons to operate Dunkin' Donuts shops at those locations.

6. DB Master Finance LLC, a Delaware limited liability company, is the sole member of Plaintiffs DD IP Holder LLC, BR IP Holder LLC, and DB Real Estate Assets I LLC. In turn,

the sole member of DB Master Finance LLC is Baskin-Robbins International LLC, a Delaware limited liability company. The sole member of Baskin-Robbins International LLC is Baskin-Robbins Flavors LLC, a Delaware limited liability company. The sole member of Baskin-Robbins Flavors LLC is Baskin-Robbins USA LLC, a California limited liability company. The sole member of Baskin-Robbins USA LLC is Baskin-Robbins LLC, a Delaware limited liability company. The sole member of Baskin-Robbins LLC is Mister Donut of America LLC, a Delaware limited liability company. The sole member of Mister Donut of America LLC is Dunkin' Donuts USA LLC, a Delaware limited liability company. The sole member of Dunkin' Donuts USA LLC is Dunkin' Donuts LLC, a Delaware limited liability company. The sole member of Dunkin' Donuts LLC is Dunkin' Brands, Inc., a Delaware corporation. The principal place of business of all the foregoing entities is at Canton, Massachusetts.

7. The sole member of Plaintiffs Dunkin' Donuts Franchising LLC and Baskin-Robbins Franchising LLC is DB Franchising Holding Company LLC, which is a Delaware limited liability company with its principal place of business at Canton, Massachusetts. In turn the sole member of DB Franchising Holding Company LLC is DB Master Finance LLC. As stated above, DB Master Finance LLC is a Delaware limited liability company with its principal place of business in Canton, Massachusetts.

8. Dunkin' and Baskin operate as separate corporations. However, they pursue or permit joint development of units in selected markets, which are commonly referred to as "combo" shops.

9. Defendant Yugdharini LLC is a North Carolina limited liability company with its principal place of business in North Carolina. Defendant Yugdharini LLC was the owner of Dunkin' Donuts and Baskin-Robbins combo shops located at (1) 6763 Albemarle Road, Charlotte,

North Carolina 28212, pursuant to a Franchise Agreement dated January 24, 2013, and (2) 5605 N. Tryon Street, Charlotte, North Carolina, pursuant to a Franchise Agreement dated January 24, 2013.

10. Defendant Rohitkumar L. Savani is a natural person and a citizen and resident of North Carolina. Defendant Savani is a member of Yugdharini LLC and personally guaranteed Yugdharini LLC's obligations under the Franchise Agreements and Sublease Agreements pursuant to executed personal guarantees.

11. Defendant Rajendra I. Patel is a natural person and a citizen and resident of North Carolina. Defendant Patel is a member of Yugdharini LLC and personally guaranteed Yugdharini LLC's obligations under the Franchise Agreements and Sublease Agreements pursuant to executed personal guarantees.

12. Defendant Harpreet Singh is a natural person and a citizen and resident of North Carolina. Defendant Singh is a member of Yugdharini LLC and personally guaranteed Yugdharini LLC's obligations under the Franchise Agreements and Sublease Agreements pursuant to executed personal guarantees.

13. Defendant Babubhai K. Dudhat is a natural person and a citizen and resident of North Carolina. Defendant Dudhat is a member of Yugdharini LLC and personally guaranteed Yugdharini LLC's obligations under the Franchise Agreements and Sublease Agreements pursuant to executed personal guarantees.

14. Defendant Jagdish N. Nakrani is a natural person and a citizen and resident of North Carolina. Defendant Nakrani is a member of Yugdharini LLC and personally guaranteed Yugdharini LLC's obligations under the Franchise Agreements and Sublease Agreements pursuant to executed personal guarantees.

## JURISDICTION AND VENUE

15. This Court has jurisdiction pursuant to Sections 34(a) and 39 of the Lanham Act, 15 U.S. C. §§ 1116 (a) & 1121, and 28 U.S.C. §§ 1331, 1332(a), 1338, & 1367(a). The amount in controversy exceeds $75,000, exclusive of interest and costs.

16. This Court has *in personam* jurisdiction over Defendants because they conduct business in this district, they are residents of this district, and/or the events giving rise to Plaintiffs' claims occurred in this district.

17. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district and/or a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

## BACKGROUND FACTS

### The Dunkin' Donuts System

18. Dunkin' is the franchisor of the Dunkin' Donuts franchise system.

19. DD IP Holder LLC is the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks. Dunkin' has the exclusive license to use and to license others to use these marks and trade name and has, along with its predecessors, used them continuously since approximately 1960 to identify its donut shops, and the donuts, pastries, coffee, and other products associated with those shops.

20. DD IP Holder LLC owns numerous federal registrations for the mark "Dunkin' Donuts," and related marks. Among those registrations are Registration Nos. 748,901; 1,148,165; and 2,751,007. Each of these registrations is in full force and effect, and is incontestable pursuant to 15 U.S.C. § 1065. Each registration is prima facie evidence of the validity of the registration, of DD IP Holder LLC's ownership of the Dunkin' Donuts marks, and of Dunkin' exclusive right to use those marks in commerce on the services and goods listed above, as provided in 15 U.S.C.

§§ 1057(b) and 1115(a).

21.     The Dunkin' Donuts trademarks and trade name are distinctive and famous and have acquired secondary meaning.

22.     The Dunkin' Donuts trademarks and trade name are utilized in interstate commerce.

23.     The Dunkin' Donuts marks have been very widely advertised and promoted by Dunkin' over the years.  Since 1971, Dunkin' and its franchisees spent over $2.5 billion on advertising and promoting the Dunkin' Donuts marks.

24.     Dunkin' Donuts franchisees currently operate more than 12,000 restaurants worldwide, including over 8,800 restaurants in the United States.  Dunkin' Donuts shops feature Dunkin' Donuts' distinctive trade dress, including the pink and orange color scheme, and the frankfurter lettering style.  In the more than fifty years since the Dunkin' Donuts system began, millions of consumers have been served in Dunkin' Donuts shops.

25.     As a result of the extensive sales, advertising, and promotion of items identified by the Dunkin' Donuts marks, the public has come to know and recognize the Dunkin' Donuts marks, and to associate them exclusively with products and services offered by Dunkin' and its franchisees.  The Dunkin' Donuts marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Dunkin', representing and embodying Dunkin's considerable goodwill and favorable reputation.

### The Baskin-Robbins System

26.     Baskin-Robbins is the franchisor of the Baskin-Robbins franchise system.

27.     Baskin-Robbins is engaged in the business of franchising independent businesspersons to individually own and operate Baskin-Robbins shops throughout the United States.

28. BR IP Holder LLC is the owner of the trademark, service mark, and trade name "Baskin-Robbins" and related marks. Baskin-Robbins has the exclusive license to use and to license others to use these marks and trade names and has, along with its predecessors, used them continuously since approximately 1947 to identify its ice cream stores, and the ice cream and other products associated with those stores.

29. BR IP Holder LLC owns numerous federal registrations for the mark "Baskin-Robbins" or derivations thereof, as well as related marks. Each of these registrations is in full force and effect, and most of them are incontestable pursuant to 15 U.S.C. § 1065. Each registration is prima facie evidence of the validity of the registration, of BR IP Holder LLC's ownership of the Baskin-Robbins Marks, and of Baskin-Robbins' exclusive right to use those marks in commerce on the services and goods listed above, as provided in 15 U.S.C. §§ 1057(b) and 1115(a).

30. The Baskin-Robbins trademarks are utilized in interstate commerce.

31. The Baskin-Robbins marks have been very widely advertised and promoted by Baskin-Robbins over the years. As a result, the Baskin-Robbins marks have become famous throughout the United States.

32. Baskin-Robbins and its franchisees currently operate approximately 2,500 shops in the United States and 7,600 shops around the world. In the more than seventy years since the Baskin-Robbins system began, millions of consumers have been served in Baskin-Robbins stores.

33. As a result of the extensive sales, advertising, and promotion of items identified by the Baskin-Robbins marks, the public has come to know and recognize the Baskin-Robbins marks, and to associate them exclusively with products and services offered by Baskin-Robbins and its franchisees. The Baskin-Robbins marks are among the best and most widely known trademarks

in the United States today, and are assets of inestimable value to Baskin-Robbins, representing and embodying Baskin-Robbins' considerable goodwill and favorable reputation.

### Obligations Under the Franchise Agreements

34. Under the Franchise Agreements, Defendants agreed to use the Dunkin' Donuts and Baskin-Robbins proprietary marks, including but not limited to, their trademarks, service marks, logos, emblems, trade dress and other indicia of origin, only in the manner and to the extent specifically licensed by the Franchise Agreements. (Franchise Agreements § 9.0).

35. Pursuant to the Franchise Agreements, Dunkin' and Baskin-Robbins have the right to establish "Standards" "for various aspects of its System that include the . . . quality of the operating systems of restaurants and other concepts; the products that are sold; . . . and all other things affecting the experience of consumers who patronize [the] System." (Franchise Agreements § 2.2).

36. Defendants also agreed that they were "responsible for . . . exercising day-to-day control over your franchised business. You also have the responsibility to adhere to the Standards of the System as they now exist and may from time to time be modified, and you acknowledge that at the heart of [the] System and this franchise relationship is your commitment to that responsibility." (*Id.* § 2.3.)

37. Pursuant to the Franchise Agreements, Defendants agreed to operate their franchises in accordance with Dunkin's and Baskin-Robbins' operational Standards, including but not limited to complying with all of Dunkin's and Baskin-Robbins' requirements relating to health, food safety, and sanitation. (*Id.* §§ 7.0, 7.08.)

38. Defendants agreed to cure a violation of "any . . . Standard relating to health, sanitation or safety . . . within twenty-four hours after delivery of notice of default to you in our

then-standard form or forms of communication." (*Id.* § 14.1.3.)

39. Defendants also agreed that Dunkin' and Baskin-Robbins may terminate the Franchise Agreements without providing them an opportunity to cure if they default under the Franchise Agreements and they have received three (3) or more previous notices to cure for the same or substantially similar default (whether or not they have cured the default), within the immediately preceding twelve-month period. (*Id.* § 14.2.)

40. Defendants agreed that upon the termination of the Franchise Agreements, among other things, their right to use the Dunkin' Donuts and Baskin-Robbins proprietary marks and systems would cease, and that they would immediately cease to operate the franchised businesses, cease to use the proprietary marks and system, and would not, directly or indirectly, hold themselves out as present or former franchisees of Dunkin' Donuts and Baskin-Robbins. (*Id.* §§ 14.6, 14.7.2, 14.7.3).

41. Defendants also agreed that they would promptly pay Plaintiffs all sums owing and any damages, interest, costs, and expenses, including reasonable attorneys' fees, incurred as a result of Defendants' defaults. (*Id.* § 14.4.4.)

**Obligations Under the Sublease Agreements**

42. On January 24, 2013, Defendant Yugdharini LLC entered into an Agreement to Transfer by Sale of Assets, pursuant to which it was assigned Sublease Agreements for both shops with DB Real Estate Assets I LLC.

43. Under the Sublease Agreements, Defendants agreed that DB Real Estate Assets I LLC has the right to terminate the Sublease Agreements if the Franchise Agreement for the respective shop is terminated for any reason. (Sublease Agreements § 13.7).

44. Defendants agreed that DB Real Estate Assets I LLC has the right, upon

10

Case 3:18-cv-00300   Document 1   Filed 06/08/18   Page 10 of 18

termination, to enter upon the premises and repossess the same and expel Defendant. (*Id.* § 9.5).

45. Defendant agreed to pay DB Real Estate Assets I LLC all reasonable attorneys' fees and costs it incurs in enforcing Defendant's obligations under the Sublease Agreement. (*Id.*).

**Defendants' Defaults**

46. Defendants breached the Franchise Agreements and Sublease Agreements by committing the conduct described below.

47. On July 6, 2017, May 30, 2018, and June 2, 2018, Defendants' shops were inspected by Plaintiffs. The inspections revealed numerous violations of Plaintiffs' standards for health, food safety, and sanitation. Each inspection resulted in a failing grade.

48. After the failed inspections in July 2017, Defendants were placed into Plaintiffs' Process for Improvement program. The Process for Improvement program is an approximately 90-120 day program designed to assist franchisees in refocusing on the basics of operating their restaurants and in complying with Plaintiffs' operating standards.

49. Despite being placed in the Process for Improvement program, Defendants failed to demonstrate sufficient progress, and in March 2018 were issued an Unsuccessful Exit from the program.

50. On July 11, 2017, May 31, 2018, and June 4, 2018, Defendants were sent Notices to Cure for both shops notifying them that they were in default of their Franchise Agreements based on their failure to comply with Plaintiffs' standards. The Notices demanded that they cure the violations identified on the inspection forms they had been provided within 24 hours, per the terms of the Franchise Agreements. While Defendants did ultimately cure the violations identified during the July 6, 2017 inspection, in each subsequent instance Defendants failed to cure the violations noted.

51. On June 6, 2018, Defendants' shops were inspected and, once again, found to be in

default of Plaintiffs' standards. For example, the inspections revealed the existence of mold in the ice machine, food preparation equipment not properly cleaned and sanitized, food not properly dated or stored, and improper hygiene practices by employees, to name but a few of the violations identified.

52. Accordingly, pursuant to the applicable provisions of the Franchise Agreements and Sublease Agreements, on June 7, 2018, Plaintiffs sent Defendants a Notice of Termination. The Notice of Termination terminated the Franchise Agreements and Sublease Agreements, stated the grounds for termination, and requested that Defendants immediately comply with their post-termination obligations as set forth in the Franchise Agreements and Sublease Agreements.

53. Notwithstanding Defendants' breaches of the Franchise Agreements and Sublease Agreements, the resulting termination of the Franchise Agreements and Sublease Agreements, and the Notice of Termination, Defendants have continued to operate the shops, using the Dunkin' Donuts and Baskin-Robbins systems and Dunkin's and Baskin-Robbins' proprietary marks without having any right or license to do so.

## COUNT I
**(Breach of Contract - Breach of Franchise Agreements)**

54. The allegations of paragraphs 1 through 53 are hereby incorporated by reference.

55. Dunkin' and Baskin-Robbins have performed all of their obligations under the Franchise Agreements.

56. Defendants' conduct described herein constitutes breaches of the above-described contractual obligations contained in the Franchise Agreements.

57. These breaches constitute good cause for terminating the Franchise Agreements.

58. As a result of Defendants' actions, Plaintiffs have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an

amount that has yet to be determined, but is believed to be in excess of $75,000.00 exclusive of costs and interest.

## COUNT II
**(Breach of Contract - Breach of Sublease Agreements)**

59. The allegations of paragraphs 1 through 58 are hereby incorporated by reference.

60. DB Real Estate Assets I LLC has performed all of its obligations under the Sublease Agreements.

61. Defendants' conduct described herein constitutes breaches of the above-described contractual obligations contained in the Sublease Agreements.

62. These breaches constitute good cause for terminating the Sublease Agreements.

63. As a result of Defendants' actions, DB Real Estate Assets I LLC has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined, but is believed to be in excess of $75,000.00 exclusive of costs and interest.

## COUNT III
**(Trademark Infringement)**

64. The allegations of paragraphs 1 through 63 are hereby incorporated by reference.

65. The use in commerce of the Dunkin' Donuts and Baskin-Robbins trademarks and trade names by Defendants outside the scope of the Franchise Agreements and without Dunkin's and Baskin-Robbins' consent is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Dunkin' and Baskin-Robbins. Such unauthorized use of Dunkin's and Baskin-Robbins' trademarks and trade names infringes their exclusive rights in their trademarks under Section 32 of the Lanham Act, 15 U.S.C. § 1114 and applicable state law.

66. The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

67. As a result of the actions of Defendants, Dunkin' and Baskin-Robbins have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined, but is believed to be in excess of $75,000.00 exclusive of costs and interest.

## COUNT IV
### (Unfair and Deceptive Trade Practices/Competition)

68. The allegations of paragraphs 1 through 67 are hereby incorporated by reference.

69. The use in commerce of Dunkin's and Baskin-Robbins' trademarks and trade names by Defendants outside the scope of the Franchise Agreements and without the consent of Dunkin' and Baskin-Robbins is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities by another person. Such unauthorized use of Dunkin's and Baskin-Robbins' trademarks and trade names violates Section 43 of the Lanham Act, 15 U.S.C. § 1125(a) and applicable state law.

70. The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

71. As a result of Defendants' unfair and deceptive trade practices, Dunkin' and Baskin-Robbins have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined, but is believed to be in excess of $75,000.00 exclusive of costs and interest.

72. As a further result of Defendants' unfair and deceptive trade practices, Plaintiffs seek treble damages per N.C.Gen.Stat. § 75-16 and recovery of reasonable attorney's fees per N.C.Gen.Stat. § 75-16.1.

## COUNT V
## (Trade Dress Infringement)

73. The allegations of paragraphs 1 through 71 are hereby incorporated by reference.

74. Defendants' shops are identified by signs, exterior appearance, packaging, containers, and other items on which the words "Dunkin' Donuts" and/or "Baskin-Robbins" appear in the same lettering style and in the same distinctive color scheme as Dunkin' Donuts and Baskin-Robbins use for the donut and ice cream shops operated by their licensees.

75. The use by Defendants of trade dress that is identical to the Dunkin' Donuts and Baskin-Robbins trade dress outside the scope of the Franchise Agreements constitutes a false designation of the origin of Defendants' shops, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of their shop with the Dunkin' Donuts and Baskin-Robbins shops operated by their licensees. Such adoption of Dunkin' Donuts' and Baskin-Robbins' trade dress violates Section 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

76. The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

77. As a result of the actions of Defendants, Dunkin' and Baskin have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined, but is believed to be in excess of $75,000.00 exclusive of costs and interest.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

a. Enter an order stating that: the conduct of Defendants violated the terms of the Franchise Agreements and Sublease Agreements; the conduct of Defendants constitutes good

cause for terminating those agreements; and the agreements are terminated without prejudice to Plaintiffs' additional rights thereto;

b.	Enter an injunctive order ratifying and enforcing the termination of the Franchise Agreements and Sublease Agreements;

c.	Enter a judgment in favor of Plaintiffs for the damages incurred by them as a result of the breaches of the Franchise Agreements and Sublease Agreements by Defendants, which are believed to be in excess of $75,000.00 exclusive of costs and interest;

d.	Enter a judgment in favor of Plaintiffs for the damages incurred by them as a result of Defendants' violation of Plaintiffs' trademark rights, which are believed to be in excess of $75,000.00 exclusive of costs and interest;

e.	Enter a judgment in favor of Plaintiffs for the damages incurred by them as a result of Defendants' use of the Dunkin' Donuts and Baskin-Robbins trade dress outside the scope of the Franchise Agreements, which are believed to be in excess of $75,000.00 exclusive of costs and interest;

f.	Enter a judgment in favor of Plaintiffs for the damages incurred by them as a result of Defendants' unfair and deceptive trade practices, including without limitation Defendants' use in commerce of Dunkin's and Baskin-Robbins' trademarks and trade names by Defendants outside the scope of the Franchise Agreements and without the consent of Dunkin' and Baskin-Robbins, which are believed to be in excess of $75,000.00 exclusive of costs and interest;

g.	Treble Plaintiffs' damages incurred as a result of Defendants' unfair and deceptive trade practices and award Plaintiffs their reasonable attorneys fees per N.C.Gen.Stat. §§ 75-16 and 75-16.1, respectively;

h.	Enjoin Defendants and all those acting in concert with them from infringing upon

Plaintiffs' trademarks, trade dress, and trade names and from otherwise engaging in unfair competition with Plaintiffs;

 i. Enter an injunctive order directing Defendants to comply with their post-termination obligations under any contract with Plaintiffs, including but not limited to the Franchise Agreements and Sublease Agreements;

 j. Award Plaintiffs prejudgment interest in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117;

 k. Award Plaintiffs their costs and attorneys' fees incurred in connection with this action pursuant to the Franchise Agreements, Sublease Agreements, and Section 35 of the Lanham Act, 15 U.S.C. § 1117; and

 l. Award Plaintiffs such other relief as this Court may deem just and proper.

Dated: June 8, 2018       Respectfully submitted,

             */s/ Jeffrey A. Long*
             Jeffrey A. Long, Esq.
             **BRAY & LONG, PLLC**
             Tranquil Court
             2820 Selwyn Avenue, Suite 400
             Charlotte, North Carolina 28209
             Telephone: (704) 523-7777
             Facsimile: (704) 523-7780
             Email: jlong@braylong.com

David Worthen, *pro hac vice to be filed*
Jonathan Labukas, *pro hac vice to be filed*
**QUARLES & BRADY LLP**
1701 Pennsylvania Ave., NW
Suite 700
Washington, DC 20006
Telephone: (202) 372-9511
Facsimile: (202) 372-9582
David.Worthen@quarles.com
Jonathan.Labukas@quarles.com